UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Caption in Compliance with D.N.J. LBR 9004-1(b)

**RABINOWITZ, LUBETKIN & TULLY, LLC**
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039
(973) 597-9100
Jonathan I. Rabinowitz
Jay L. Lubetkin *(Pro Hac Vice* pending)
*Proposed Counsel to Debtor/Debtor-In-Possession*
*Big Apple Energy, LLC*

| | |
|---|---|
| In re: | Chapter 11 |
| BIG APPLE ENERGY, LLC, | Case No. 18-75807 |
| Debtor. | Honorable |
| | Hearing Date: |

### DEBTOR'S MOTION FOR ORDER AUTHORIZING THE USE OF THE CASH COLLATERAL OF MACQUARIE BANK LIMITED, FOR ENTRY OF AN INTERIM AND FINAL ORDER AUTHORIZING THE DEBTOR TO OBTAIN POST-PETITION FINANCING FROM MACQUARIE PURSUANT TO 11 U.S.C. § 364(D) <u>AND OTHER RELATED RELIEF</u>

TO:    The Honorable Judges of the United States
        Bankruptcy Court for the Eastern District of New York
        Central Islip Vicinage

Big Apple Energy, LLC, debtor/debtor-in-possession, (the "Debtor"), by and through its proposed attorneys Rabinowitz, Lubetkin & Tully, LLC, seek entry of an interim and final order substantially in the form attached hereto as Exhibit "A" authorizing the Debtor to obtain post-petition financing from Macquarie Bank Limited, ("Macquarie"), and to use Macquarie's cash collateral, and granting related relief and in support, shows as follows:

## JURISDICTION AND VENUE

1.      The Bankruptcy Court for the Eastern District of New York has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 107 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein include §§ 105, 363, 364(d)(1) of Title 11 of the United States Code, Federal Rules of Bankruptcy Procedure 2002, 4001, 9014, and E.D.N.Y. LBR 4001-5 and 9013-1(a).

## BACKGROUND

5.      On August 27, 2018, the Debtor and its affiliate Clear Choice Energy, LLC filed Voluntary Petitions for relief under Chapter 11 of the United States Bankruptcy Code thereby commencing the above captioned Chapter 11 case and the case of the Debtor's affiliate.

6.      No trustee has been appointed herein and no official committee of creditors has been appointed herein.

7.      The Debtor is vested with control of its assets and financial affairs as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

8.      The Debtor is in the business of selling gas and electric energy service to various wholesalers, who in turn provide gas and electric service to end users. The Debtor also provides financing to wholesalers who purchase electric and gas service. Some of the financing customers of the Debtor are the purchasers of electric and gas service of the Debtor, and others purchase gas and electric services from third-parties.

9.    In order for the Debtor to satisfy its wholesale customers' request for gas and electric service, the Debtor has to purchase the particular gas or electric service, and purchase the transmission capacity to have that gas or electric service delivered to its customers.

10.    As of the commencement of the bankruptcy proceeding, upon information and belief, the Debtor's assets were subject to a fully perfected alleged secured claim constituting a first priority claim in favor of Macquarie in the amount of approximately $20,800,000. The Macquarie debt is also a joint and several secured debt of the Debtor's affiliate Clear Choice Energy, LLC, also a debtor herein.

11.    Macquarie's first priority position arises out of a Intercreditor Agreement dated July 1, 2015 by and between the Debtor, its affiliate Clear Choice Energy, LLC, Macquarie, and Penta Mezzanine SBIC Fund I, L.P. ("Penta") pursuant to which Penta subordinated its secured claim to Macquarie.

12.    Importantly, in that Intercreditor Agreement, Penta is deemed to have consented to any DIP financing provided by Macquarie and subordinating its debt to any DIP financing to Macquarie and is not entitled to any adequate protection regardless of the impact such DIP financing request may have on Penta's alleged secured status.

13.    The Debtor's primary assets consist of limited cash in the bank, accounts receivable which form the basis of the amount of lending availability from Macquarie, and contracts for the future supply of energy to customers, which contracts in turn will generate future receivables and proceeds.

14.    Given the emergent nature of the commencement of the Debtor's bankruptcy proceeding, counsel has not been able to perform a full analysis of the Debtor's assets and the value thereof, in comparison to the outstanding amounts owed to its alleged secured creditors,

but it appears that Macquarie is fully secured in its capacity as a first priority secured creditor, and Penta as a result, is partially or wholly unsecured.

15.    In order to continue to operate its business, to preserve asset values for the benefit of its creditors and the within bankruptcy estate, to continue to employ its employees, and to continue to be able to provide gas and electric service to its wholesale customers who in turn will then be able to supply utility service to its end users, it is reasonable, necessary, and appropriate that the Debtor be authorized to use cash collateral of Macquarie and to obtain DIP financing from Macquarie.

16.    Prior to the filing of this motion, the Debtor and Macquarie have been working on a term sheet respecting such use of cash collateral and DIP financing in an amount of up to $6.25 million, substantially in the form of the Term Sheet attached hereto as Exhibit "A." Also attached hereto as Exhibit "B" is a draft of a Debtor-In-Possession Credit Agreement. The Term Sheet and Credit Agreement are subject to final approval of the parties. Certain terms are highlighted in accordance with the requirements of E.D.N.Y. LBR 4001-5 as follows:

| Carveout for Professionals | Budget – page 3<br>Carveout Expense – page 7 |
| Secured Creditors' Expenses and Fees | Budget – page 3 |
| Fees Related to Lien Challenge | Carveout Expenses – page 7, subparagraph (d) and (e) |

17.    Prior to the commencement of the bankruptcy filing, the Debtor solicited the services of an investment banker, in an effort to locate third-party financing to continue to fund operations. Despite diligent good faith efforts, neither the Debtor nor its investment banker could obtain financing on an unsecured creditor basis, financing on a secured creditor basis subordinate to the existing alleged secured claims, and there is no other source of capital for the Debtor other than the proposed DIP facility from Macquarie.

18.     Attached hereto as Exhibit "C" is a budget the Debtor and Macquarie have been working on in connection with their communications for a DIP loan. While details of the budget may change, based on continued discussions between the parties, as currently drafted, the budget sets forth the anticipated expenditures which the Debtor will be satisfying from Macquarie's cash collateral and the DIP facility, which will enable the Debtor to operate in the ordinary course in the period immediately after the commencement of the bankruptcy proceeding with a minimum of disruption.

19.     Based upon a review of the budget and the projections for generating sales and receivables as a result of such expenditures, both the Debtor and Macquarie believe that to the extent the budget anticipates the use of cash collateral, Macquarie will be adequately protected by the replacement lien on the Debtor's post-petition receivables, and that the DIP financing is necessary to protect the interests of the Debtor, its creditors, and within bankruptcy estate.

## Basis for Relief

20.     Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances as described in greater detail below. Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant debtors considerable deference in acting in accordance with their sound business judgment in obtaining such credit. See In re Barbara K. Enters., Inc., No. 08-11474 (MG), 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and unfairly cede control of the reorganization to one party in interest."); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy

Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); In re Farmland Indus., Inc., 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) ("[T]he applicable factors [include] [t]hat the proposed financing is an exercise of sound and reasonable business judgment....).

21.    Furthermore, in determining whether a debtor-in-possession has exercised sound business judgment in deciding to enter into the DIP Loan Documents, the Court should consider the economic terms of the DIP Facility in light of current market conditions. See, e.g., Transcript of Record at 734-35:24-1, In re Lyondell Chem. Co., No. 09-10023 (Bankr. S.D.N.Y. Mar. 5, 2009) (recognizing that "the terms that are now available for DIP facilities in the current economic environment aren't as desirable" as in the past). Moreover, the Court may appropriately take into consideration non-economic benefits to the Debtors offered by a proposed post-petition facility. For example, in In re ION Media Networks, Inc., the Bankruptcy Court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization. This is particularly true in a bankruptcy setting where cooperation and establishing allegiances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009).

22.    Section 364 of the Bankruptcy Code authorizes a debtor to obtain, in certain circumstances, post-petition financing on a secured or superpriority basis, or both. Specifically, section 364(c) of the Bankruptcy Code provides, in pertinent part, that the Court, after notice and a hearing, may authorize a debtor that is unable to obtain credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to obtain credit or incur debt:

(a) with priority over any or all administrative expenses of the kind specified in § 503(b) or 507(b) of [the Bankruptcy Code];

(b) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(c) secured by a junior lien on property of the estate that is subject to a lien. 11 U.S.C. § 364(c).

23.    In order to satisfy the requirements of section 364(c) of the Bankruptcy Code, a debtor need only demonstrate "by a good faith effort that credit was not available" to the debtor on an unsecured or administrative expense basis. Bray v. Shenandoah Fed. Says. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). "The statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id.; see also Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 584 (S.D.N.Y. 2001) (superpriority administrative expenses authorized where debtor could not obtain credit as an administrative expense). When few lenders are likely to be able and willing to extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom. Anchor Says. Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989). See also Ames Dep't Stores, 115 B.R. at 40 (approving financing facility and holding that the debtor made reasonable efforts to satisfy the standards of § 364(c)

where it approached four lending institutions, was rejected by two, and selected the most favorable of the two offers it received).

24.     Pre-petition, the Debtor and its investment banker made efforts to obtain debtor-in-possession financing on an unsecured or administrative basis and was unsuccessful. In fact, the Debtor was unable to obtain such alternative financing on any basis.

25.     Section 364(d) of the Bankruptcy Code authorizes financing with a lien senior to existing liens if:

> (A) the trustee is unable to obtain such credit otherwise; and
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

Here, these requirements have been satisfied because pursuant to an inter-creditor agreement with Macquarie, Penta has consented to this financing in a position senior to its lien, has waived the right to adequate protection, and has waived the right to object

26.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

27.     As explained herein, the DIP Loan Documents are the result of the Debtor's reasonable and informed determination that the DIP Lender offered the most favorable terms on

which to obtain needed post-petition financing, and of extended arm's-length, good faith negotiations between the Debtor and the DIP Lender. The terms and conditions of the DIP Loan Documents are fair and reasonable, and the proceeds under the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Loan Documents other than as described herein. Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code, and is entitled to all of the protections afforded by that section.

28.     The DIP Loan Documents and the proposed Final Order contemplate that the automatic stay arising under section 362 of the Bankruptcy Code shall be vacated or modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence and during the continuation of any Event of Default (as such term is defined in the DIP Credit Agreement), all rights and remedies provided for in the DIP Credit Agreement, and to take various other actions without further order of or application to the Court. The Debtor requests that the DIP Lender provide the Debtors, the United States Trustee and counsel to the Committee, if any, fifteen (15) days' prior written notice before exercising any enforcement rights or remedies against the Collateral, which will allow the Debtor and other interested parties to seek an expedited hearing before the Court for the purpose of determining whether, in fact, an Event of Default has occurred and is continuing.

29.     Stay modification provisions of this sort are ordinary features of debtor in possession financing facilities and, in the Debtor's business judgment, are reasonable under the circumstances. See, e.g., In re Hawker Beechcraft, Inc., No. 12-11873 (SMB) (Bankr. S.D.N.Y. June 1, 2012); In re Velo Holdings Inc., No. 12-11384 (MG) (Bankr. S.D.N.Y. Apr. 23, 2012); In re United Retail Grp., Inc., No. 12-10405 (SMB) (Bankr. S.D.N.Y. Feb. 23, 2012); In re

Hostess Brands, Inc., No. 12-22052 (RDD) (Bankr. S.D.N.Y. Feb. 3, 2012); In re Insight Health Servs. Holdings Corp., No. 10-16564 (AJG) (Bankr. S.D.N.Y. Jan. 4, 2011); In re NR Liquidation HI Co. (f/k/a Neff Corp.), No. 10-12610 (SCC) (Bankr. S.D.N.Y. June 30, 2010); In re The Reader's Digest Ass'n, No. 09-23529 (RDD) (Bankr. S.D.N.Y. Oct. 6, 2009); In re Lear Corp., No. 14326 (ALG) (Bankr. S.D.N.Y. Aug. 4, 2009); In re Gen. Growth Prop. Inc., No. 09-11977 (Bankr. S.D.N.Y. May 14, 2009); In re Tronox Inc., No. 09-10156 (Bankr. S.D.N.Y. Feb. 6, 2009); In re Chemtura Corp., No. 09-11233 (Bankr. S.D.N.Y. Apr. 23, 2009); In re Wellman, Inc., No. 0810595 (Bankr. S.D.N.Y. Apr. 7, 2008); In re Musicland Holding Corp., No. 06-10064 (Bankr. S.D.N.Y. Feb. 21, 2006).

30.     The Debtor has an immediate need for access to liquidity to, among other things, continue the operation of the Debtor's businesses, maintain important relationships with customers, meet payroll, procure goods and services from vendors and suppliers and otherwise satisfy the Debtor's working capital and operational needs, all of which are required to preserve and maintain the Debtor's going concern value for the benefit of all parties in interest.

31.     The importance of a debtor's ability to secure post-petition financing to prevent immediate and irreparable harm to its estate has been repeatedly recognized in similar circumstances. See, e.g., In re the Brown Publ'g Co., No. 10-73295 (DTE) (Bankr. E.D.N.Y. Jul. 2, 2010 (same); In re United Retail Grp., Inc., No. 12-10405 (SMB) (Bankr. S.D.N.Y. Feb. 2, 2012) (same); In re Sbarro, Inc., No. 11-11527 (SCC) (Bankr. S.D.N.Y. Apr. 5, 2011) (same); In re MSR Resort Golf Course LLC, No. 11-10372 (SHL) (Bankr. S.D.N.Y. Mar. 16, 2011) (same); In re Insight Health Servs. Holdings Corp., No. 10-16564 (AJG) (Bankr. S.D.N.Y. Jan. 4, 2011); In re Great Atl. & Pac. Tea Co., No. 10-24549 (RDD) (Bankr. S.D.N.Y. Dec. 13, 2010) (same); In re The Reader's Digest Assoc., No. 09-23529 (RDD) (Bankr. S.D.N.Y. Aug. 26, 2009)

(same); In re Tronox Inc., No. 09-10156 (ALG) (Bankr. S.D.N.Y. Jan. 13, 2009) (same); In re Lyondell Chem. Co., No. 09-10023 (REG) (Bankr. S.D.N.Y. Jan. 8, 2009) (same); In re Lenox Sales, Inc., No. 08-14679 (ALG) (S.D.N.Y. Nov. 25, 2008) (same); In re Wellman, Inc., No. 08-10595 (SMB) (S.D.N.Y. Feb. 27, 2008) (same). Accordingly, for all of the reasons set forth above, prompt entry of the Final Order is necessary to avert immediate and irreparable harm to the Debtor's estate and is consistent with, and warranted under, Bankruptcy Rules 4001(b)(2) and (c)(2).

32.    Pursuant to Bankruptcy Rule 4001(c)(2), the Debtor seeks a hearing on a final financing order on a minimum of fourteen (14) days notice consistent with the Court's calendar. In addition, the Debtor seeks an preliminary hearing on the shortest possible notice to avoid immediate and irreparable harm to the estate. The Debtor shall serve the financing motion in the manner required by the Bankruptcy Rules, Local Bankruptcy Rules and this Court's order shortening time.

### No Prior Request

33.    No prior request for the relief sought in this Motion has been made to this or any other Court.

### Notice

34.    Notice of the within Motion is being provided to the Debtor's secured creditors, its 20 largest unsecured creditors, and the United States Trustee's Office.

35.    A proposed form of order approving financing and use of cash collateral is annexed hereto as Exhibit "A". The form of order originated with Macquarie and reflects the Debtor's proposed revisions which have not yet been agreed to.

WHEREFORE, the Debtor respectfully requests entry of the Final Order, substantially in the form attached as Exhibit "A," (i) granting the relief requested herein; and (ii) granting such other relief as is just and proper.

DATED:  August 27, 2018

RABINOWITZ, LUBETKIN & TULLY, LLC
*Proposed Counsel for Clear Choice Energy, LLC*

By:

JONATHAN I. RABINOWITZ

12