# Exhibit A

Big Apple Energy, LLC
and
Clear Choice Energy, LLC
<u>Preliminary Debtor-In-Possession (DIP) Financing Term Sheet</u>
<u>August 27, 2018</u>

*NOT A COMMITMENT*

This "<u>Term Sheet</u>" describes the proposed terms for a superpriority, debtor-in-possession revolving credit facility to Big Apple Energy, LLC and Clear Choice Energy, LLC, which might be provided in connection with a liquidation proceeding under chapter 11 of the United States Bankruptcy Code. The proposal embodied in this Term Sheet is for discussion purposes only and is not intended to set forth any definitive terms pursuant to which a credit facility would be provided. This Term Sheet is not a commitment or agreement to provide any financing or to grant any waiver or forebear from exercising any remedies available to Macquarie Investments US Inc., Macquarie Energy LLC or any of their respective affiliates.

This Term Sheet is subject to the parties' agreement that it shall not be used as evidence in any litigation, contested matter or adversary proceeding, and is subject to the provisions of Rule 408 of the Federal Rules of Evidence and other similar applicable rules under federal and state law.

This Term Sheet is confidential and may not be disclosed to any person or entity other than the Borrowers' respective officers, directors, employees and professional advisors.

| Term | Description |
|---|---|
| Facility | A senior secured revolving loan superiority, debtor-in-possession credit facility provided to the Borrowers ("<u>**DIP Facility**</u>"). |
| Facility Size | Up to $6.25 million maximum revolving commitment which, if provided, would be required to be funded in accordance with the DIP Facility Documentation and Budget. The Budget would include a schedule of timing and amount of projected drawings under the DIP Facility. |
| Petition Date | The date of filing of a chapter 11 case by Debtors, which would be expected to occur by no later than August 27, 2018. |
| Debtors | 1. Big Apple Energy, LLC, a Nevada limited liability company ("<u>**BAE**</u>").<br><br>2. Clear Choice Energy, LLC, a New York limited liability company ("<u>**CCE**</u>" and, together with BAE, the "<u>**Borrowers**</u>" or the "<u>**Debtors**</u>"). |
| DIP Lender | Macquarie Investments US Inc. ("<u>**Macquarie**</u>") or any other affiliate of Macquarie designated by Macquarie. |

40800625.7

| | |
|---|---|
| **Effective Date of DIP Facility** | If provided, upon entry of Interim DIP Order (the "**Effective Date**"). |
| **Maturity** | The maturity of the DIP Facility (the "**Maturity Date**") would be the earliest of: (i) the effective date of a Chapter 11 plan for the Debtors, (ii) the sale of all or a substantial part of the assets of the Debtors, (iii) the sixtieth (60th) day following the Effective Date, or (iv) the occurrence and declaration of an Event of Default by the DIP Lender. |
| **Repayment; Application of Collections** | Borrowers would be permitted to repay their obligations under the DIP Facility ("**DIP Obligations**") in whole or in part at any time without premium or penalty. At Maturity, advances under the DIP Facility would be required to be repaid in full, together with accrued interest on amounts advanced.<br><br>All collections received by the Debtors during the term of the DIP Facility would be required to be applied to the DIP Obligations in the priority set forth in the DIP Facility Documentation. |
| **Priority** | Super-priority administrative claim against Borrowers. Super-priority senior lien, pursuant to section 364(d) of the Bankruptcy Code, against all assets of Borrowers, whether real or personal, including postpetition assets (including avoidance actions), subject only to the Carve-out Expenses. |
| **First Lien Creditors** | Macquarie, in its capacity as Lender under the Amended and Restated Borrowing Base Facility Agreement dated as of April 12, 2016 (as amended, the "**Facility Agreement**"), and Macquarie Energy LLC ("**Macquarie Energy**"), in its capacity as hedge counterparty under the ISDA Master Agreement dated as of July 1, 2015 (as amended, and together with each Schedule, Annex and Confirmation thereto, the "**ISDA Agreement**"). |
| **First Lien Agent** | Macquarie, in its capacity as collateral agent for the benefit of itself and the First Lien Creditors. |
| **First Lien Secured Parties** | First Lien Creditors and First Lien Agent, collectively. |
| **First Lien Adequate Protection and Cross-Collateralization** | As part of the DIP Orders, the liens and obligations of the First Lien Secured Parties would be required to be acknowledged, affirmed and validated by the estates, subject to any action commenced by a creditor of the Debtors no later than 45 days following the appointment of an unsecured creditors committee. The First Lien Agent, for the benefit of the First Lien Secured Parties, would also be required to receive replacement liens on all assets of the Borrowers and superpriority claims under Section 507(b) of the Bankruptcy Code to the extent of any diminution in the value of its collateral, which replacement liens and claims would be required to be senior to all other liens and claims, subject only to the liens and claims in favor of the DIP Facility and to the Carve-out Expenses. |

|  | |
|---|---|
|  | As part of the DIP Orders, the liens and obligations of the First Lien Secured Parties would be required to include liens on all post-petition assets of the Borrowers. |
| **Budget** | A 60-day budget would be required to be agreed upon among the parties with respect to revenues and expenses of Borrowers, including any fees and expenses of legal counsel to the DIP Lender and the First Lien Secured Parties (the "**Budget**"). There would be an event of default if the Budget amount is exceeded by any amount for certain specific items to be agreed to by the parties or by the permitted variances for other items agreed to by the parties. The Budget would, among other things, be required to provide for (i) legal expenses of the DIP Lender and First Lien Secured Parties, (ii) $150,000 of the upfront retainer for counsel to the Borrowers, and (iii) fees and expenses of the CRO, in an aggregate amount for the foregoing clauses (i) through (iii) of up to $[500,000] for the 60-day maximum term of the DIP Facility, with the remaining $[5.75] million available for funding in accordance with the Use of Proceeds. |
| **Use of Proceeds** | Proceeds of advances under the DIP Facility would be permitted solely to support specified, verifiable business expenses agreed to by the parties in the Budget. |
| **Interest Rate** | 3-month LIBOR + 4.75% per annum, payable in arrears at the end of any calendar month during the term of the DIP Facility and at maturity. Default rate of 5% would be payable on all outstanding obligations under the DIP Facility upon and during continuance of an Event of Default. |
| **Facility Fee** | 1% of all amounts actually funded under the DIP Facility, payable on the date of the applicable funding. |
| **Collateral** | Pursuant to Sections 364(c) and (d) of the Bankruptcy Code, the DIP Obligations would be required to be secured by security interests ("**DIP Liens**") in all of the Borrowers' and their bankruptcy estates' assets (the "**Collateral**"), including proceeds and rights in respect of avoidance actions under sections 510, 544, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code ("**Avoidance Actions**"). Collateral would include all property that is not subject to a security interest or lien as of the Petition Date and property that is covered by a security interest or lien as of the Petition Date. Such liens on the Collateral would be required to be valid, enforceable and perfected first-priority priming liens and security interests, with priority over any and all prepetition or postpetition liens, security interests and other interests and would be permitted to be subject and junior only to the Carve-Out Expenses. The DIP Lender would also be required to have a superpriority administrative expense under section 364(c)(1) against the Borrowers for the amount of all obligations under the DIP Facility, subject only to the Carve-Out Expenses. No person other than the DIP Lender would be permitted to have a lien on the collateral, except for (i) the liens of the First Lien Secured Parties |

| | |
|---|---|
| | (including adequate protection liens provided herein) and (ii) the liens in favor of Penta Mezzanine SBIC Fund I, L.P. pursuant to the Note and Warrant Purchase Agreement dated July 1, 2015, as amended (it being understood that pursuant to the DIP Orders any and all such liens would be required to be junior to the DIP Facility). |
| **Liquidation Milestones** | The Debtors would be required to satisfy the following milestones by the following dates:<br><br>(a) By no later than the thirtieth (30th) day following the Petition Date, the Debtors would be required to have received and applied to the DIP Obligations net proceeds in an aggregate amount not less than $6,000,000 from the liquidation (which may be through a sale, refinancing, remedial action, or other process acceptable to the DIP Lender) of all positions, contractual arrangements and other interests in North Energy, LLC, North Energy Power, LLC, Union Atlantic Electricity, City Power & Gas, LLC, Carbon Capture Resources, LLC, Utility Expense Reduction, LLC and/or Renaissance Power & Gas, LLC;<br><br>(b) By no later than the thirty-seventh (37th) day following the Petition Date, the Debtors would be required to have received and applied to the DIP Obligations net proceeds in an aggregate amount not less than $14,000,000 from the liquidation (which may be through a sale, refinancing, remedial action, or other process acceptable to the DIP Lender) of all positions, contractual arrangements and other interests in North Energy, LLC, North Energy Power, LLC, Union Atlantic Electricity, City Power & Gas, LLC, Carbon Capture Resources, LLC, Utility Expense Reduction, LLC and/or Renaissance Power & Gas, LLC; and<br><br>(c) **[Others TBD]** |
| **Conditions Precedent for Effectiveness of DIP Facility** | Conditions would be customary for facilities of this type, and other conditions including:<br><br>(a) Rejection of contracts agreed to by the parties (including contracts between Borrowers and certain ESCOs) and agreement of the parties to a remediation plan setting forth specified remedial actions against such ESCOs and the collateral pledged by them to the Borrowers by specified deadlines;<br><br>(b) Bankruptcy Court approval of DIP Facility on an interim basis no later than August 29, 2018 (the "**Interim DIP Order**") and, on a final basis no later than [September __], 2018 (the "**Final DIP Order**" and, collectively with the Interim Order, the "**DIP Orders**").<br><br>(c) DIP Orders would be subject to the Budget, which would provide only for the payment of necessary cash operating expenses of the Borrowers, and not any intercompany payments or allocations, including with respect to professionals fees and expenses except in accordance with the Budget; |

|   |   |
|---|---|
|   | (d) Payment of outstanding fees and expenses of the DIP Lender and the First Lien Secured Parties, including any fees and expenses of legal counsel to the DIP Lender and the First Lien Secured Parties.<br><br>(e) Each borrowing would be consistent with the most recently delivered and approved Budget subject to any variances as permitted by the DIP Facility Documentation;<br><br>(f) Appointment of a CRO satisfactory to the DIP Lender.<br><br>(g) Interim Order would be required to be acceptable to the DIP Lender and would be required to include provisions relating to the DIP Facility that are customary for facilities of this type and other provisions acceptable to the DIP Lender and to the First Lien Secured Parties (with respect to adequate protection);<br><br>(h) execution and delivery of DIP Facility Documentation and other customary loan documents in form and substance satisfactory to the DIP Lender;<br><br>(i) All first day motions filed by the Debtors and all first day orders entered on the docket of the Bankruptcy Court would be required to be satisfactory to the DIP Lender;<br><br>(j) No material adverse change would have occurred with respect to the operations, properties, or financial condition of the Borrowers, taken as a whole, since the commencement of the Chapter 11 case; and<br><br>(k) The Debtors would be required to have granted a full release with respect to any claims against the DIP Lender, the First Lien Secured Parties, and their respective affiliates and other related parties, in form and substance satisfactory to the DIP Lender and First Lien Secured Parties. |
| **Chief Restructuring Officer** | The Debtors would be required to appoint a chief restructuring officer ("**CRO**") satisfactory to the DIP Lender and the First Lien Secured Parties to perform certain services, including, but not limited to, the following:<br><br>• Oversight and management of remediation and liquidation plan;<br><br>• Assistance with cash management and financial reporting;<br><br>• Oversight of business plan;<br><br>• Support supplier and ESCO management and communication efforts;<br><br>• Provide verification of ESCO receivables, ESCO borrowing bases and ESCO margin on credit with Borrowers; |

40800625.7

| | |
|---|---|
| | • Support Chapter 11 filing; and<br><br>• Oversight and approval of all reporting to the Bankruptcy Court and secured lenders. |
| **Covenants** | Would include customary affirmative and negative covenants for facilities of this type and this transaction in particular, including:<br><br>(a) reasonable access to information relating to the Borrowers and close consultation with DIP Lender regarding the operations of the Borrowers;<br><br>(b) compliance with Budget;<br><br>(c) operating covenants regarding revenues in accordance with the Budget;<br><br>(d) other covenants contained in existing Facility Agreement; and<br><br>(e) other provisions which would be contained in DIP Orders and DIP Facility Documentation. |
| **Events of Default** | Would include customary and appropriate events of default for financings of this type and this transaction in particular, including the following:<br><br>(a) breach of Budget amounts in excess of permitted variances;<br><br>(b) customary bankruptcy events of default, including conversion or dismissal of case, or appointment of trustee;<br><br>(c) change of venue of case from the Eastern District of New York;<br><br>(d) reversal or modification of any of the DIP Orders without the consent of the DIP Lender;<br><br>(e) other breaches of covenants, subject to customary grace periods and cure periods if applicable;<br><br>(f) the Debtors shall propose a plan of liquidation that either (i) does not contemplate the full repayment in full in cash of the DIP Facility on the Maturity Date or (ii) is not otherwise reasonably acceptable to the DIP Lender;<br><br>(g) payment defaults under the DIP Facility;<br><br>(h) failure to satisfy any of the Liquidation Milestones; and<br><br>(i) other defaults which would be included in DIP Facility Documentation and DIP Orders. |
| **Remedies** | During the continuance of an Event of Default, the DIP Lender would be permitted to exercise all remedies under applicable bankruptcy |

6

40800625.7

| | |
|---|---|
| | and/or non-bankruptcy law with respect to the Collateral and to require the appointment of a trustee to administer the estates of the Borrowers, and the automatic stay would not apply to any such remedies. |
| **Representations & Warranties, Deliverables, Assignment Provisions, Amendment Provisions, Expenses, Indemnities, Jurisdiction, Other Provisions** | Would be customary for financings of this type and substantially similar to those contained in the Facility Agreement. |
| **Carve-Out Expenses** | The DIP Lender's liens and administrative claims and the First Priority Secured Parties' liens would be subject to the prior payment of the Carve-Out Expenses. "**Carve-Out Expenses**" would mean (i) allowed, accrued, but unpaid professional fees of the Debtors and one official committee of creditors consistent with and not in excess of the amounts included in the Budget which have been incurred prior to the occurrence and declaration of an Event of Default, (ii) allowed, accrued but unpaid professional fees and expenses incurred by the Debtors and such official committee of creditors consistent with the Budget which are incurred after the declaration of an Event of Default (that is not cured or waived) in an aggregate amount not to exceed $25,000, and (iii) fees payable to the U.S. trustee pursuant to 28 U.S.C. § 1930 and to the clerk of the Bankruptcy Court; provided, however, that the Carve-Out Expenses would not include (a) any other claims that are or may be senior to or pari passu with any of the Carve-Out Expenses, (b) any fees or expenses of a Chapter 7 trustee, (c) any fees or disbursements arising after the conversion of any of the Chapter 11 Cases to a Chapter 7 Case (d) any fees or disbursements related to the investigation of, preparation for, or commencement or prosecution of any litigation, proceeding or adverse action against, or challenge to the rights, validity and/or the first-priority status of liens and prepetition secured claims of the First Lien Secured Parties, or (e) any fees or disbursements related to any challenge or objection to the debt or collateral position of the DIP Lender or hindering or delaying the DIP Lender's enforcement or realization upon the Collateral once an Event of Default has occurred and is continuing. |
| **DIP Facility Documentation** | The debtor-in-possession financing agreement (the "**DIP Agreement**") and all other documents, agreements, certificates and opinions to be executed or delivered, or relating to the transactions contemplated would be required to be in form and substance acceptable to DIP Lender in its sole discretion. In the sole discretion of the DIP Lender, funding under the Interim DIP Order (or if decided by the DIP Lender, funding under the Final DIP Order) may be made on the basis of a "short form" promissory note and the DIP Orders. |
| **Limited Waiver and Forbearance** | Effective upon the Petition Date, the First Lien Secured Parties would agree (a) to waive Section 1(e) of each of the Limited Guaranty, dated as of July 1, 2015, by Victor M. Ferreira in favor of Macquarie, |

7

40800625.7

| | |
|---|---|
| | and the Limited Guaranty, dated as of July 1, 2015, by Karen J. Ferreira in favor of Macquarie (collectively, the "**Personal Guaranties**"); and (b) for the period commencing on the Petition Date and terminating on the Maturity Date, to forbear from exercising remedies under the Personal Guaranties or BAE Energy Management, LLC's pledge of its membership interests in the Debtors to the First Lien Agent, for the benefit of the First Lien Secured Parties, pursuant to that certain Pledge and Security Agreement, dated as of July 1, 2015, by and among BAE Energy Management, LLC, the Debtors, and the First Lien Secured Parties, subject to the early termination of such forbearance period for certain acts, omissions or events as may be specified by the First Lien Secured Parties that are inconsistent with the proposed chapter 11 case.<br><br>The agreement evidencing the limited waiver and forbearance would include a full release from Victor M. Ferreira, Karen J. Ferreira, and BAE Energy Management, LLC with respect to any claims against the DIP Lender, the First Lien Secured Parties, and their respective affiliates and other related parties, in form and substance satisfactory to the DIP Lender and First Lien Secured Parties. |
| **Vantage Forbearance** | Effective upon the Petition Date, Macquarie Bank Limited, in its capacities as Administrative Agent and Lender under that certain Amended and Restated Borrowing Base Facility Agreement, dated as of December 30, 2018, between Vantage Commodities Financial Services, LLC, Vantage Commodities Financial Services II, LLC, and Macquarie Bank Limited (the "**Vantage BBFA**"), would agree that for the period commencing on the Petition Date and terminating on the ninetieth (90th) day thereafter, it would forbear from exercising remedies under the Vantage BBFA and the other Transaction Documents (as defined in the Vantage BBFA), subject to the early termination of such forbearance period for the occurrence or discovery of any new Events of Default (as defined in the Vantage BBFA) or the occurrence of certain acts, omissions or events as may be specified by Macquarie Bank Limited that are inconsistent with the proposed chapter 11 case.<br><br>The agreement evidencing the forbearance would include a full release from Vantage Commodities Financial Services, LLC and Vantage Commodities Financial Services II, LLC with respect to any claims against Macquarie Bank Limited and its affiliates and other related parties, in form and substance satisfactory to Macquarie Bank Limited. |
| **Governing Law** | New York |
| **Non-Binding Effect** | This Term Sheet constitutes only a preliminary statement of the intentions of the parties and does not contain all matters upon which agreement must be reached for the DIP Facility to be provided, which would be accomplished by (a) Macquarie's agreement, which may be provided or withheld in its sole discretion, to provide the DIP Facility |

8

40800625.7

| | |
|---|---|
| | and (b) the execution of definitive documentation to be agreed by the parties. |