JEFFREY A. WURST
MICHAEL S. AMATO
JENNIFER L. HARTMANN
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, New York 11556-1425
(516) 663-6600

*Attorney for the ESCO Claimants*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| BIG APPLE ENERGY, LLC | Case No. 18-75807-ast |
| Debtor. | |

-------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| CLEAR CHOICE ENERGY, LLC | Case No. 18-75807-ast |
| Debtor. | |

-------------------------------------------------------X

**LIMITED OBJECTION OF CERTAIN ESCO CLAIMANTS TO THE DEBTORS'
MOTION FOR INTERIM AND FINAL ORDERS: (A) AUTHORIZING THE DEBTOR
TO USE CASH COLLATERAL, (B) AUTHORIZING THE DEBTOR TO OBTAINING
POST-PETITION FINANCING, (C) GRANTING SECURITY INTERESTS AND
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS TO THE LENDER;
(D) GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS;
(E) SCHEDULING A FINAL HEARING; AND (F) GRANTING RELATED RELIEF**

Ameristar Energy, LLC, Allied Consolidated Energy, High Rise Energy, LLC, United Energy Supply Corp, Global Energy, LLC, All American Power & Gas, LLC, Flanders Energy, LLC and Pure Energy USA, LLC (collectively, the "ESCO Claimants"), by their attorney, Ruskin Moscou Faltischek, P.C., as and for their limited objection to the Debtor's *Motion for*

799188

*Interim and Final Orders (A) Authorizing the Debtor to Use Cash Collateral, (B) Authorizing the Debtor to Obtaining Post-Petition Financing, (C) Granting Security Interests and Superpriority Administrative Expense Status to the Lender; (D) Granting Adequate Protection to Existing Lienholders; (E) Scheduling a Final Hearing; and (F) Granting Related Relief* (the "Financing Motion"), state as follows:

1. Each of the ESCO Claimants is an energy service company that purchases energy products (natural gas and/or electricity) from the Debtors, and is a party and party-in-interest in either or both of the above-captioned Chapter 11 cases.

2. Each of the ESCO Claimants sells the energy purchased from the Debtors to end users through delivery systems owned and operated by public service utility companies (*e.g.*, natural gas pipelines and overhead and underground electrical wiring systems). In each instance, the utility companies bill and collect from the end users for: (a) the costs associated with the delivery of the energy products ("Delivery Costs"); (b) the costs for the energy products themselves (the "Energy Costs"); (c) the sales and other taxes associated with the transaction (the "Taxes"); and (d) the amount charged by the ESCOs in connection with the sale (the "ESCO Charges").

3. Once the monies are collected from the end users, the utility companies keep their Delivery Costs and then forward the Energy Costs, Taxes and ESCO Charges to the ESCOs or their designees.

4. In or about 2015, the Debtors obtained financing (the "Financing") from Macquarie Investments US Inc. and or its affiliates ("Macquarie") to enable it to post collateral to and make purchases of energy from the gas pipelines and independent system operators that distribute electricity.

799188

5. As a condition to providing the Financing, Macquarie required that the Debtors' account debtors, *i.e.*, their energy service company ("ESCO") clients, direct the utility companies delivering energy to their end users to transmit the Energy Costs, Taxes and ESCO Charges to one or more lockboxes under the control of the Debtors and/or Macquarie (collectively, the "Lockbox"). Upon information and belief, the Lockbox was subject to a control agreement in favor of Macquarie.

6. In order to accommodate the Debtors and to continue receiving services from them, the Debtors' ESCO clients executed agreements whereby they directed the utility companies to transmit the Energy Costs, Taxes and ESCO Charges to the Lockbox. Thereafter, the Debtors removed the funds from the Lockbox and, pursuant to monthly reconciliations provided by the Debtors to the ESCOs which described the energy used by the end users, the costs of the energy used and the collections of payments from the end users that were turned over to the Lockbox, (a) paid the Energy Costs to themselves, and (b) paid the Taxes and ESCO Charges to the appropriate ESCO.

7. The Debtors never had any right or interest in the Taxes or ESCO Charges. Rather, the Taxes and ESCO Charges were earmarked for the Debtors' ESCO clients.

8. In or about May, 2018, the Debtors failed to provide reconciliations or turn over to the ESCO Claimants the Taxes and ESCO Charges received by them from the utility companies. Since that time, the Debtors have turned over some monies to the ESCO Claimants, but certainly not all. The ESCO Claimants use those monies to pay taxes to the appropriate governing authorities and fund their operating expenses, including employee salaries, and, now, due to the Debtors' failure to transmit the monies to the ESCO Claimants, are without funds necessary to do so.

799188

9. Prior to the commencement of these cases, Macquarie exercised its rights under a control agreement and swept the Lockbox (the "Sweep"), taking dominion of *all* the funds in the Lockbox, including the Taxes and ESCO Charges which were not and are not property of the Debtors' Estates or collateral for the benefit of Macquarie. To the contrary, the Taxes and ESCO Charges were earmarked for the ESCO Claimants.

10. Upon information and belief, none of the ESCO Claimants executed or delivered any security agreement or authorized the filing of any Uniform Commercial Code Financing Statement (each a "UCC-1") in favor of any of the Debtors or of Macquarie. Notwithstanding, a random review of public records has revealed UCC-1 Financing Statements of record against some of the ESCO Claimants, none of which were authorized.

11. Assuming, *arguendo,* the Debtors had a security interest in all the monies paid into the Lockbox, including the Taxes and ESCO Charges, the Debtors still could not have had a security interest or right to possession in any monies in excess of what the ESCOs owed to the Debtors, *i.e.*, the Energy Costs. In turn, Macquarie's collateral was limited only to the Energy Costs and Macquarie had no right to Sweep the Taxes and ESCO Charges, too, from the Lockbox.

12. As stated above, the Taxes and ESCO Charges are not property of the Estates and are not the collateral of Macquarie. The Energy Costs are the only part of the Lockbox funds that may comprise Macquarie's collateral. The balance of the Lockbox funds were monies the Debtors (a) received in trust for the benefit of the taxing authorities for whom the Taxes were collected, and (b) earmarked for the ESCOs who are entitled to the ESCO Charges.

13. Upon information and belief, as of the date of the Sweep, the Lockbox held millions of dollars and as much as fifty percent (50%) was comprised of the Taxes and ESCO

Charges which belonged to the ESCOs. Thus, by sweeping the Taxes and ESCO Charges, Macquarie recovered two times more money than it was entitled to recover, which equates to millions of dollars over which Macquarie now is illegally exercising dominion.

14.     The ESCO Claimants object to any portion of any proposed order (including any order to be issued as a result of the Financing Motion) that authorizes Macquarie to continue its illegal practice of exercising dominion over the Taxes and ESCO Charges. Additionally, the ESCO Claimants request that each interim and final order entered in these cases require Macquarie to pay the Taxes and ESCO Charges it recovered in the Sweep, as well as any Taxes and/or ESCO Charges Macquarie or the Debtors may recover during these cases, to the ESCO Claimants. Such payments are necessary to enable the ESCOs to continue operating their businesses, and, should the Debtors continue to operate and they assume their agreements with the ESCOs, these payments will generate future receivables and proceeds for the Debtors. Indeed, in the Financing Motion, the Debtors themselves state that "contracts for the future supply of energy to customers, which contracts in turn will generate future receivables and proceeds" are one of the three primary Estate assets. (Financing Motion ¶ 13). Paying the ESCO Claimants would enable the Estate to preserve the value of that asset.

15.     The ESCO Claimants observe that the terms and conditions proposed to be contained in any form of order circulated with respect to the Financing Motion are, at best, onerous and overreaching. The ESCO Claimants respectfully request that no Final Order issue until such time as the Committee for Unsecured Creditors has been organized and retained counsel and such counsel has had an opportunity to review and object to the terms demanded by Macquarie and presented by the Debtors.

WHEREFORE, it is respectfully requested that any order issued with respect to the

799188

Financing Motion:

a) Specifically exclude from Macquarie's collateral any of the Lockbox funds consisting of Taxes and/or ESCO Charges;

b) Direct Macquarie to immediately pay to the ESCO Claimants all Taxes and ESCO Charges recovered in the Sweep;

c) Direct Macquarie and the Debtors to promptly pay to the ESCO Claimants any Taxes and/or ESCO Charges Macquarie and/or the Debtors recovers during these cases; and

d) For such other, further and different as this Court may deem just and proper.

Dated: Uniondale, New York
September 11, 2018

                                            RUSKIN MOSCOU FALTISCHEK, P.C.
                                            *Attorney for the ESCO Claimants*

By: _____
       Jeffrey A. Wurst
       Michael S. Amato
       Jennifer L. Hartmann
       East Tower, 15th Floor
       1425 RXR Plaza
       Uniondale, NY 11556-1425
       (516) 663-6600