JEFFREY A. WURST  
MICHAEL S. AMATO  
JENNIFER L. HARTMANN  
RUSKIN MOSCOU FALTISCHEK, P.C.  
East Tower, 15th Floor  
1425 RXR Plaza  
Uniondale, New York 11556-1425  
(516) 663-6600  

Hearing Date/Time: September ____, 2018; ____ a.m.  
Objection Date/Time: September ____, 2018; ____ p.m.  

*Attorney for the ESCO Claimants*

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
----------------------------------------------------------X  

In re:  

BIG APPLE ENERGY, LLC  

        Debtor.  

----------------------------------------------------------X  

In re:  

CLEAR CHOICE ENERGY, LLC  

        Debtor.  

----------------------------------------------------------X  

Chapter 11  

Case No. 18-75807-ast  

Chapter 11  

Case No. 18-75808-ast  

## MOTION TO COMPEL DEBTORS TO ASSUME OR REJECT AGREEMENTS

Ameristar Energy, LLC, Allied Consolidated Energy, High Rise Energy, LLC, United Energy Supply Corp, Global Energy, LLC, All American Power & Gas, LLC, Flanders Energy, LLC and Pure Energy USA, LLC (collectively the "Movants" or "ESCO Claimants"), by their counsel, Ruskin Moscou Faltischek, P.C., as and for their motion (the "Motion") for entry of an order pursuant to 11 U.S.C. § 365(d)(2), and Fed. R. Bankr. Pro. ("FRBP") 6006 compelling (i) the debtors Big Apple Energy, LLC ("Big Apple") and its affiliate Clear Choice Energy, LLC

799191

("Clear Choice" and, together with Big Apple, the "Debtors") to assume or reject their Natural Gas Sales Agreements, Power and Other Related Services Agreements and their other agreements with the Debtors (the "Agreements") within two weeks of the entry of an Order approving this Motion (the "Assumption / Rejection Date"), and (ii) the Debtors and their lender, Macquarie Investments US Inc. and or its affiliates ("Macquarie"), to notify the utility companies to terminate the notices previously provided by the Debtors and ESCO Claimants and authorize and direct the utility companies to redirect the monies presently being paid to one or more lockboxes under the control of the Debtors and/or Macquarie (collectively, the "Lockbox") to the ESCO Claimants or their designees; together with such other and further relief as the Court deems just and proper, respectfully state as follows:

## PRELIMINARY STATEMENT

1. By this motion the ESCO Claimants are asking this Court to provide them relief by compelling the Debtors to either assume the Agreements, which will require providing adequate assurance of future performance and curing all defaults, or reject the Agreements and allow the ESCO Claimants to replace the Debtors as their purchasing agents.

## PROCEDURE

2. On August 27, 2018 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11, United States Code, 11 U.S.C. *et seq.* (the "Bankruptcy Code").

3. The Debtors are authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

4. As of the date of this Motion, no trustee or official committee has been appointed

in these cases.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for relief are 11 U.S.C. §§ 365(d)(2) and 362(a) and FRBP 4001 and 6006.

## BACKGROUND

8. Pursuant to the Agreements between the respective ESCO Claimants and the Debtors, the Debtors purchase natural gas and/or electricity from gas pipelines and independent electricity service organizations (the "Suppliers") for the benefit of the ESCO Claimants. The Debtors also post collateral as may be required by the Suppliers in order to assure future payments for the purchase of energy.

9. The ESCO Claimants then sell the energy purchased by the Debtors to end users through delivery systems owned and operated by public service utility companies (*e.g.*, natural gas pipelines and overhead and underground electrical wiring systems). In each instance, the utility companies bill and collect from the end users for: (a) the costs associated with the delivery of the energy products ("Delivery Costs"); (b) the costs for the energy products themselves (the "Energy Costs"); (c) the sales and other taxes associated with the transaction (the "Taxes"); and (d) the amount charged by the ESCOs in connection with the sale (the "ESCO Charges"). Once the monies are collected from the end users, the utility companies keep their Delivery Costs and then forward the Energy Costs, Taxes and ESCO Charges to the ESCOs or

3

their designees.

10. In or about 2015, the Debtors required that the ESCO Claimants direct the utility companies to remit the Energy Costs, Taxes and ESCO Charges to the Lockbox.

11. In order accommodate the Debtors and to continue receiving services from them, the ESCO Claimants executed agreements whereby they directed the utility companies to transmit the Energy Costs, Taxes and ESCO Charges to the Lockbox. Thereafter, the Debtors removed the funds from the Lockbox and, pursuant to monthly reconciliations provided by the Debtors to the ESCO Claimants which described the energy used by the end users, the costs of the energy used and the collections of payments from the end users that were turned over to the Lockbox, (a) paid the Energy Costs to themselves, and (b) paid the Taxes and ESCO Charges to the appropriate ESCO Claimants.

12. The ESCO Claimants' businesses rely upon satisfactory performance of the Debtors' obligations under the Agreements. As an initial matter, the Debtors must timely pay the Suppliers. In the event the Debtors were to default in doing so the Suppliers will notify the utility companies who will migrate the ESCO's customers back to the utility companies and away from the ESCO, thereby destroying the ESCO's customer base and revenues. Additionally, the ESCOs are obligated to pay the Taxes (which were paid by the end users to the utilities and forwarded to the Debtors' Lockbox) to the governing authorities, and the ESCO Charges to fund their operations, including their payroll. Thus, in order for the ESCO Claimants to operate, it is critical that the Debtors comply with their obligations to remit the Taxes and ESCO Charges to the ESCO Claimants.

13. Prior to the commencement of these Chapter 11 cases, the Debtors defaulted on their obligations under the Agreements. They failed to make certain payments to Suppliers and,

since in or about May 2018, have been in default in turning the entirety of the Taxes and ESCO Charges over to the ESCO Claimants.

14. In order to save their businesses, the ESCO Claimants were forced to scrapple funds together to pay the Suppliers themselves, as well as to fund their tax obligations and operations.

15. With each day that passes, the amount of funds necessary to continue paying Suppliers and fund their tax obligations and operations grows, and that amount will continue to grow during the pendency of these cases.

16. Absent the relief requested by this Motion, the ESCO Claimants will be held captive to the Debtors and its lender who have taken and will continue to take all the monies in the Lockbox, notwithstanding the fact that nearly half of those monies are Taxes and ESCO Charges which are earmarked for the ESCO Claimants. The ESCO Claimants are running out of money and are being forced out of business.

## ARGUMENT

*The Debtors Should Be Compelled to Assume or*
*Reject the Agreements by the Assumption / Rejection Date*

17. Pursuant to 11 U.S.C. § 365(d)(2), a bankruptcy trustee has until plan confirmation to decide whether to assume or reject an executory contract. *See* 11 U.S.C. § 365(d)(2). However, upon the request of the non-debtor party to the contract, the Court may order the trustee to assume or reject the contract within a specified time. *Id; In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 428 (S.D.N.Y. Bankr. 2012). What constitutes a reasonable time for a debtor to assume or reject a contract is a matter left to the Court's discretion, based upon the particular facts of the case. *In re Adelphia Comm'cns Corp.*, 291 B.R. 283, 292 (Bankr. S.D.N.Y. 2003); *see Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982) ("What

constitutes a reasonable time is left to the bankruptcy court's discretion in the light of the circumstances of each case."); *In re Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001) ("What constitutes a reasonable time is left to the bankruptcy court's discretion, to be determined on a case-by-case basis in light of the broad purposes of the entire Bankruptcy Code."); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) ("In reviewing a debtor's decision to assume or reject an executory contract, the court must examine the contract and circumstances and apply *its* best business judgment to determine if the assumption or rejection would be beneficial or burdensome to the estate") (emphasis added).

18. In determining whether to shorten the period of time in which a debtor must assume or reject an executory contract, courts employ the following twelve factor test:

1. the nature of the interests at stake;

2. the balance of the hurt to the litigants;

3. the good to be achieved;

4. the safeguards afforded to the litigants;

5. whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary;

6. the debtor's failure or ability to satisfy post-petition obligations;

7. the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

8. the importance of the contract to the debtor's business and reorganization;

9. whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization;

10. whether there is a need for judicial determination as to whether an executory contract exists;

11. whether exclusivity has been terminated; and

12. above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

*In re Hawker Beechcraft, Inc.*, 483 B.R. at 429 (quoting *In re Adelphia Commc'ns*, 291 B.R. at 293; *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006)). These factors are not exhaustive, and depending on the circumstances, there may be other factors that a bankruptcy court should consider. *Id.* (citing cases).

19. Here, these factors weigh in favor of compelling the Debtors to assume or reject the Agreements by the Assumption / Rejection Date sought herein:

1. *The nature of the interests at stake*: The Debtors interest in their Agreements with the ESCO Claimants is their *raison d'être*. Without their service contracts, the Debtors cannot exist. Likewise, in order to stay in business, the ESCO Claimants require that the Debtors satisfactorily perform their obligations under the Agreements. Unless the Debtors do so, it is only a matter of time before the ESCO Claimants are forced to cease operating.

2. *The balance of the hurt to the litigants:* At the hearings held to date before this Court, the parties have been clear that this case is a liquidation. In that case, the ESCO Claimants will need to replace the Debtors as their purchasing agents prior to the time that Macquarie ceases providing funds to the Debtors because, once Macquarie's funding ceases, the ESCO Claimants' businesses will be destroyed. On the flip side, even if this case were a reorganization, it would be critical to the Debtors that they assume the Agreements because absent a prompt assumption (or rejection) the ESCO Claimants will forced out of business, thereby negating any value of the Agreements for the Estates.

3. *The good to be achieved*: By allowing the ESCO Claimants to exit the Agreements, they will be able to purchase energy directly from the Suppliers or find a replacement agent for the Debtors and, more importantly, they will be able to collect the Taxes and ESCO Charges directly, which will enable them to pay their taxes, employees and other operating expenses.

4. *The safeguards afforded to the litigants*: Rejection of the Agreements will safeguard the ESCO Claimants' ability to continue in business. The Debtors, on the other hand, are in liquidation and will not be reorganizing. Even if they were reorganizing, assuming the Agreements would protect the value of the Agreements for the Estates.

5. *Whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary*: Congress established the bankruptcy courts with broad equitable rights. In would be inequitable for

7

Macquarie to continue to convert all funds resulting from the ESCO Claimants' proper business efforts.

6. *The debtor's failure or ability to satisfy post-petition obligations*: This factor weighs heavily in that the Debtors have not paid their administrative obligations to the ESCO Claimants and even when they attempted to include payments to the ESCO Claimants in the budget with respect to their financing order, Macquarie insisted that those payments, in the approximate amount of $1 million, be removed from the budget.

7. *The damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code*: As indicated above, the ESCO Claimants have been scrapping money together to fund their operations since May, 2018, without receiving the majority of the ESCO Charges to which they are entitled, and are on the brink of losing their businesses.

8. *The importance of the contract to the debtor's business and reorganization*: As indicated at the hearing held before this Court on September 6, 2018, Macquarie is providing funding for the purpose of liquidating its $20 million loan and does not intend to provide funding for the Debtors to reorganize. In addition, it is estimated that one half of the funds taken by Macquarie when it swept the Debtors' Lockbox, are funds that comprise the Taxes and ESCO Charges which were earmarked for the ESCO Claimants.

9. *Whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization*: The Debtors know that their financial situation is dire and that there is no likelihood of a reorganization.

10. *Whether there is a need for judicial determination as to whether an executory contract exists*: The executory nature of the Agreements should be clear: the Debtors purchase energy for the benefit of the ESCO Claimants, collect the proceeds of payments made by the end users of that energy, and then disburse the appropriate portion of those proceeds to the ESCO Claimants. The Debtors have not disbursed the funds and are in breach of their executory obligations under the Agreements.

11. *Whether exclusivity has been terminated*; Exclusivity has not been terminated.

12. *The broad purpose of Chapter 11, which is to permit successful rehabilitation of debtor*: There will not be a rehabilitation of these Debtors.

20. It is submitted that it will not only be proper, but that equity cries out to compel the Debtors to assume or reject the Agreements by the Assumption / Rejection Date. Similarly,

8

the Court also should compel the Debtors and Macquarie (along with the ESCO Claimants) to notify the utility companies to terminate the notices previously provided by the Debtors and ESCO Claimants and authorize and direct the utility companies to redirect the monies presently being paid to the Lockbox to the ESCO Claimants or their designees. Absent such an order, the Debtors and Macquarie will continue to receive the funds in the Lockbox to which they have no right or interest. Indeed, the Debtors already are receiving funds in the Lockbox to which they have no right or interest because, in some cases, the Debtors ceased providing energy and ESCO Claimants have been paying the Suppliers themselves.

## NOTICE

21.     The Movants have provided copies of Motion upon: (i) Debtor's counsel; (ii) the Office of the United States Trustee; and (iii) all parties that requested notice in this case. The Movants respectfully submit that such notice is reasonable and is good and proper notice and no additional notice is necessary or required.

## COMPLIANCE WITH LOCAL BANKRUPTCY RULE 9013-1

22.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion. Accordingly, the ESCO Claimants submit that this Motion satisfies Local Bankruptcy Rule 9013-1(a).

## CONCLUSION

WHEREFORE, based upon the foregoing, the Movants respectfully request that the Court enter an order, pursuant to 11 U.S.C. § 365(d)(2), and FRBP 6006 compelling (i) the Debtors to assume or reject the Agreements by the Assumption / Rejection Date, and (ii) the Debtors and Macquarie to notify the utility companies to terminate the notices previously

provided by the Debtors and ESCO Claimants and authorize and direct the utility companies to redirect the monies presently being paid to the Lockbox to the ESCO Claimants or their designees; together with such other, further and different relief as the Court deems just and proper.

Dated: Uniondale, New York
       September 11, 2018

                                      RUSKIN MOSCOU FALTISCHEK, P.C.
                                      *Attorney for the ESCO Claimants*

By:    /s/ Jeffrey A. Wurst
                    Jeffrey A. Wurst
                    Michael S. Amato
                    Jennifer L. Hartmann
                    East Tower, 15th Floor
                    1425 RXR Plaza
                    Uniondale, NY 11556-1425
                    (516) 663-6600